IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHARLES A. HICKS; DENEEN HICKS; STACEY HICKS, <br><br> Plaintiffs, <br><br> vs. <br><br> MAKAHA VALLEY PLANTATION HOMEOWNERS ASSOCIATION; HAWAII FIRST, INC., <br><br> Defendants. | CIV. NO. 14-00254 HG-BMK <br><br> ORDER DENYING PLAINTIFFS' MOTION FOR APPOINTMENT OF COUNSEL |

**ORDER DENYING PLAINTIFFS'
MOTION FOR APPOINTMENT OF COUNSEL**

Before the Court is Charles A. Hicks, Deneen Hicks, and Stacey Hicks' (collectively "Plaintiffs") Motion for Appointment of Counsel, filed on March 27, 2015. (Doc. 45.) The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR 7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawaii. After careful consideration of the Motion and the relevant legal authority, Plaintiffs' Motion is DENIED for the reasons set forth below.

**BACKGROUND**

On June 28, 2012, while living in California, Plaintiffs filed a complaint against Defendants Makaha Valley Plantation Homeowners Association

1

and Hawaii First, Inc. ("Defendants"), alleging housing discrimination under Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. § 3601 et seq., commonly known as the Fair Housing Act of 1968 ("Fair Housing Act"), with the U.S. Department of Housing and Urban Development ("HUD") and the Hawai'i Civil Rights Commission ("HCRC"). (Doc. 24-5, 24-6.) Plaintiffs alleged "[d]iscriminatory terms, conditions, privileges, or services and facilities," and "[f]ailure to make reasonable accommodation," stemming from:

(1) Defendants' failure to make satisfactory repairs to the interior of Plaintiffs' condominium unit caused by water leaks from the unit above them, and Defendants' failure to provide Plaintiffs with contact information for the homeowner of the unit above them, which resulted in Plaintiffs having to secure repairs to their unit for which they were not responsible for and having to secure a high-risk insurance policy for their unit;

(2) Defendants' refusal to trim the landscaping that interfered with Plaintiffs' ability to enter and exit their car when parked in their assigned parking space;

(3) Defendants' differential enforcement of the parking rules between Plaintiffs and other "non-Black residents";

(4) Defendants' refusal to provide Plaintiffs with identification information of a homeowner whose tenant made "unprovoked, racially-derogatory remarks and physically threatened Charles Hicks"; and

(5) Defendants' failure to make reasonable accommodation to Charles Hicks whose disability makes him particularly sensitive to noise disturbances.

(Doc. 24-5.) Plaintiffs maintained that they were discriminated against based upon their race, color, and Charles Hicks' disability. (Doc. 24-6.) On February 12,

2013, Defendants filed a response to Plaintiffs' HUD and HCRC complaint, which denied all of Plaintiffs' allegations of discrimination and disparate treatment, and argued that Plaintiffs filed their complaint in retaliation for Defendants' attempt to collect past and currently due maintenance fees, fines for prohibited conduct, and related late fees. (Doc. 24-7.) On February 24, 2014, the HCRC dismissed Plaintiffs' discrimination complaint on the basis of "no cause." (Doc. 24-8.)

On May 29, 2014, Plaintiffs, appearing pro se, filed the Complaint in this Court alleging housing discrimination on the basis of race while they were residing at the Makaha Valley Plantation ("MVP") condominium project in Hawaii. (Docs. 1, 24.) Sometime before filing their Complaint in this Court, Plaintiffs became residents of Lithia Springs, Georgia. (Doc. 1.) In their Complaint, Plaintiffs articulate the same allegations raised in their HCRC and HUD complaint, and allege, inter alia, that Defendants failed to make satisfactory repairs to the interior of their unit after water leaked from the unit above them, and Defendants failed to provide Plaintiffs with contact information of other homeowners within the MVP condominium project. (Doc. 1.) Plaintiffs further allege that Defendants' acts and omissions caused them to be "homeless and penniless." (Doc. 1.) Plaintiffs seek $500,000 in actual damages and $2.5 million in punitive damages. (Doc. 1.)

On August 28, 2014, Plaintiffs filed a "Request to Transfer Case,"

which this Court construed as a Motion for Transfer of Venue.  (See Doc. 19.)
Plaintiffs sought to transfer this action from this Court to the United States District
Court for the Northern District of Georgia.  (Doc. 15.)  On October 20, 2014, this
Court issued its Findings and Recommendation, finding that the District of Hawaii
is the proper venue for this case and that the balance of factors regarding
convenience and justice weigh in favor of upholding Plaintiffs' original forum
choice of the District of Hawaii.  (Doc. 25 at 13.)  On November 24, 2014, United
States District Judge Helen Gillmor adopted this Court's Findings and
Recommendation, and denied Plaintiffs' Motion to Transfer Venue.  (Doc. 27.)

On November 28, 2014, Defendants filed a Motion to Dismiss
Plaintiffs' Complaint, requesting that the Court dismiss all of Plaintiffs' claims
with prejudice.  (Doc. 28.)  Defendants argued that the Complaint is "defective,
conclusory, and riddled with defects[,]" and that "[n]o cognizable claims are stated
or identified, adequately or otherwise."  (Doc. 28-1 at 1.)  On January 26, 2015, the
Court granted Defendants' Motion to Dismiss for failure to state a claim, but
granted Plaintiffs leave to amend their complaint (hereinafter, "Dismissal Order").
(Doc. 38 at 2.)  Plaintiffs were given leave to amend their complaint in order to add
sufficient allegations to state a claim for Violation of the Fair Housing Act and the
Hawaii Discrimination in Real Property Transactions Act based on (1) race
discrimination, and (2) disability discrimination for failure to provide a reasonable

4

accommodation. (Doc. 38 at 22-23.) The Court's Dismissal Order clearly articulates the elements that Plaintiffs must establish in order to prove their claims, and further instructs Plaintiffs as to the facts they must allege in their amended complaint in order to sufficiently state a claim for which relief can be granted. (See Doc. 38 at 13-22.) In its Dismissal Order, the Court cautioned Plaintiffs that the failure to file an amended complaint consistent with the rulings contained in the order "will result in dismissal of the entire matter." (Doc. 38 at 23.)

On March 9, 2015, Plaintiffs filed an Amended Complaint. (Doc. 40.) On March 20, 2015, Defendants filed a Motion to Dismiss the Amended Complaint. (Doc. 42.) In support of its Motion to Dismiss the Amended Complaint, Defendants argue that Plaintiffs failed to comply with the rulings contained in the Court's Dismissal Order, including Plaintiffs' failure to cure the lack of specificity as to Defendants' actions and Plaintiffs' failure to cure defects with respect to their race and disability discrimination claims. (Doc. 42-1 at 20-33.) A hearing on Defendants' Motion to Dismiss the Amended Complaint is currently scheduled for June 15, 2015 before Judge Helen Gillmor. (Doc. 43.)

On March 27, 2015, Plaintiffs filed a Motion for Appointment of Counsel, which is currently before this Court. (Doc. 45.) Plaintiffs maintain they are not financially able to afford an attorney, and that they do not have the education that is needed to meaningfully prosecute this case. (Doc. 45 at 2.)

Accordingly, Plaintiffs request that the Court appoint them legal counsel. (Doc. 45.)

## DISCUSSION

A district court may, under the discretionary authority conferred upon it under 28 U.S.C. § 1915(e)(1), designate counsel to represent an indigent civil litigant.[1] There is no absolute right to counsel in civil proceedings, Hedges v. Resolution Trust Corp., 32 F.3d 1360, 1363 (9th Cir. 1994), and counsel may be designated under section 1915 only in "exceptional circumstances." See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986). A finding of exceptional circumstances requires an evaluation of both "the likelihood of success on the merits [and] the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." Id. (citing Weygandt v. Look, 718 F.2d 952, 954 (9th Cir.1983)). Neither of these factors is dispositive and both must be viewed together before reaching a decision on request of counsel under section 1915. Wilborn, 789 F.2d at 1331.

The Fair Housing Act provides, in relevant part, that upon application by a person alleging a discriminatory housing practice, the court may appoint an attorney for such person. 42 U.S.C. § 3613(b)(1). Although little case law exists on the appointment of an attorney by a court under 42 U.S.C. § 3613(b), the Court

---

[1] 28 U.S.C. § 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to afford counsel."

finds case law on the appointment of an attorney under 42 U.S.C. § 2000e–5 to be instructive on applying the provisions of 42 U.S.C. § 3613(b), given the similar nature of the underlying legal actions and the statutory language permitting the appointment of an attorney under these statutes. See Gamble v. City of Escondido, 104 F.3d 300, 304 (9th Cir. 1997) (finding that most courts applying the Fair Housing Act have analogized it to Title VII of the civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., which prohibits discrimination in employment); Pfaff v. U.S. Dep't of Hous. & Urban Dev., 88 F.3d 739, 745 n.1 (9th Cir. 1996) (noting that in a Fair House Act case the court "may look for guidance to employment discrimination cases."); Huntington Branch, NAACP v. Town of Huntington, 844 F.2d 926, 934-35 (2d Cir. 1988), aff'd, 488 U.S. 15 (1988) (Title VII analysis is persuasive in interpreting Title VIII).

Similar to the mandates of the Fair Housing Act, the 1964 Civil Rights Act provides for appointment of counsel in employment discrimination cases "in such circumstances as the court may deem just." Bradshaw v. Zoological Soc'y of San Diego, 662 F.2d 1301, 1318 (9th Cir. 1981) (internal quotation marks omitted). Three factors have emerged as relevant to the exercise of the district court's discretion under this broad statutory mandate:

> The court is required to assess: (1) the plaintiff's financial resources, (2) the efforts made by the plaintiff to secure counsel, and (3) whether the plaintiff's claim has merit.

7

Id. (citations omitted). The plaintiff has the burden of persuasion as to all three factors, and an unfavorable finding as to any one factor is fatal to his request. Miljkovic v. Univ. of Hawaii, Civ. No. 09-00064 ACK-KSC, 2010 WL 346450, at *1 (D. Haw. Jan. 27, 2010).

1. **Plaintiffs' Financial Resources**

As to the first factor, Plaintiffs' assert they "are not financially able to afford the cost to bring forward this case with a private attorney." (Doc. 45 at 2.) Plaintiffs' Motion indicates that Plaintiff Stacey Hicks is a college student; Plaintiff Charles Hicks is a disabled veteran and a retired roofer and roofing inspector; and Plaintiff Deneen Hicks is a primary caregiver of her mother and of Charles Hicks, and is also a college student. (Doc. 45-1 at 2.) Apart from Plaintiffs' statement that "[a]ll three plaintiffs are currently living off the disability payments that CHARLES HICKS gets from the Dept. of Veteran Affairs and Social Security Administration," Plaintiffs' Motion for Appointment of Counsel is devoid of any information as to their financial resources. (Doc. 45-1 at 2; see generally Docs. 45, 45-1.) A review of Plaintiffs' Application to Proceed in District Court without Prepaying Fees or Costs ("IFP Application"), filed May 29, 2014 (Doc. 3) and subsequently granted by the Court on June 4, 2014 (Doc. 6), indicates that Plaintiffs' sole source of income appears to be from gifts in the amount of $100.00 per month. Plaintiffs' IFP Application fails to mention any

disability payments received, nor does it indicate the amount and frequency of such payments. Without this information, the Court is unable to determine whether Plaintiffs have the financial resources to afford an attorney. Thus, based on the information provided by Plaintiffs, the Court is unable to determine whether Plaintiffs have sufficient income and assets to retain private counsel. Therefore, the Court finds that the financial resources factor weighs against the appointment of counsel.

**2. Plaintiffs' Efforts to Obtain Counsel**

The second factor requires Plaintiff to "make what can be considered a reasonably diligent effort under the circumstances to obtain counsel." Bradshaw, 662 F.2d at 1319. In Bradshaw, the plaintiff met this threshold by contacting more than ten attorneys, each of whom declined to represent her except upon financial terms that she was unable to meet. Id.

Here, Plaintiffs state that they "have repeatedly tried to get help" and legal advice "from other sources," but they have been unable to find an attorney in their hometown of Georgia willing to handle a case in the District of Hawaii, and they are unable to find an attorney in Hawaii willing to represent them on terms they can afford. (Doc. 45-1 at 2.) Apart from these general assertions, Plaintiffs do not specify how many attorneys were contacted, why Plaintiffs were unable to meet the terms of representation offered by the attorneys contacted and/or the

9

reason representation was declined, or why private representation is otherwise not possible. The only instance in which an explanation is given is Plaintiffs' statement that Legal Aid "was [the] only one who even considered taking the case," and they would not be able to do so without a $5,000 retainer, which Plaintiffs maintain they "do not have." (Id.)

While the Court notes that Plaintiffs have made some effort to retain counsel, greater efforts could clearly be made. Contingent fee arrangements are often appropriate when a plaintiff is able to demonstrate the existence of a valid claim, so it may be that Plaintiffs must focus on establishing for counsel why their claims are colorable. See Gregory v. Hilton Resorts Corp., Civ. No. 08-00476 SOM-BMK, 2008 WL 4755672, at *1 (D. Haw. Oct. 23, 2008) (encouraging complainant to make further efforts to secure counsel and provide counsel with details supporting his claims). Moreover, based upon Plaintiffs' representations, it appears that Plaintiffs have not attempted to take advantage of free legal services such as those provided by Volunteer Legal Services Hawaii. On the present record, the Court finds that Plaintiffs have not made a reasonably diligent effort to obtain counsel. See e.g., Turner v. Dep't of Educ., Civ. No. 10-00707 ACK-BMK, 2010 WL 6571413, at *2 (D. Haw. Dec. 13, 2010) (holding that contacting seven attorneys and Volunteer Legal Services Hawaii was not "a reasonably diligent effort under the circumstances to obtain counsel"). Accordingly, the Court finds

that this factor militates against appointing counsel.

### 3. The Merits of Plaintiffs' Claim

As to the third and final Bradshaw factor, Plaintiffs must show that their claims have "some merit." Bradshaw, 662 F.2d at 1319. In the case of motions for appointment of counsel, in order to determine whether a plaintiff's claim has merit, a court need normally look only to a determination by an administrative agency, and for practical purposes, that agency's determination is ordinarily conclusive. Id. at 1309. If the agency has found "reasonable cause," the claim should normally be deemed meritorious for purposes of appointment of counsel. Id. On the other hand,

> The district court may, perhaps even should, inquire of plaintiff as to the validity of the no reasonable cause determination and why plaintiff considers the determination to be in error. Surely, the determination of the administrative agency created to enforce the civil rights laws is not to be ignored. In this regard, a finding that the [administrative agency] determination is supported by substantial evidence in the investigative file and that plaintiff's objections thereto are patently frivolous would weigh heavily in the scales against appointing an attorney.

Id. at 1309 n.20 (citing Caston v. Sears, Roebuck & Co., 556 F.2d 1305, 1309 (5th Cir. 1977)).

Here, on February 24, 2014, the HCRC dismissed Plaintiffs' discrimination complaint on the basis of "no cause." (Doc. 24-8 at 1.) The HCRC determined that upon investigation, Plaintiffs' allegations of discrimination could

not be confirmed to the standard of proof level required by the statute for the Commission to further pursue the case. (Id.) Plaintiffs' Amended Complaint does not indicate why Plaintiffs consider the HCRC determination to be in error, and Plaintiffs' Motion for Appointment of Counsel merely states that "[P]laintiffs allege and would like the opportunity to show, how the whole investigation and handling of the case by the [HCRC] was completely flawed and biased against the [P]laintiffs." (See Doc. 40; Doc. 45-1 at 3.) Thus, absent any specifically supported objection to the HCRC "no cause" determination, the Court is unable to determine whether Plaintiffs' objections thereto are patently frivolous. Moreover, upon review of Plaintiffs' Amended Complaint, the Court is unable to find any factual allegations supporting Plaintiffs' claims that Defendants' actions were discriminatory under the Fair Housing Act, and thus, Plaintiffs have not demonstrated that their race and disability discrimination claims have merit. Thus, on the record before this Court, the Court finds that the third Bradshaw factor also weighs against the appointment of counsel.

## CONCLUSION

On balance, the Court finds that the Bradshaw factors weigh against the appointment of counsel in this case. As stated above, the appointment of counsel in civil cases is discretionary and there is no constitutional right to counsel. Further, Plaintiffs should note that in most cases, the Court cannot expend public

resources to provide plaintiffs with counsel. See McCue v. Food Pantry, Ltd., Civ. No. 08–00129 ACK–KSC, 2008 WL 852018, at *3 (D. Haw. Mar. 28, 2008). Accordingly, because "exceptional circumstances" do not exist here, Plaintiffs' Motion for Appointment of Counsel is DENIED.

The Court advises Plaintiffs that they must represent themselves pro se unless and until they are able to retain counsel and counsel enters an appearance in this case. "[A] pro se litigant is not excused from knowing the most basic pleading requirements." Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107-08 (9th Cir. 2000). Moreover, a pro se litigant is responsible for complying with all of the applicable court rules and deadlines. Motoyama v. Hawaii, Dep't of Transp., 864 F. Supp. 2d 965, 976 (D. Haw. 2012) ("[P]ro se litigants must follow the same rules of procedure that govern other litigants." (citing King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987))).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 9, 2015.



  /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Charles Hicks, et al. v. Makaha Valley Plantation Homeowners Association, et al., CIV. NO. 14-00254 HG-BMK; ORDER DENYING PLAINTIFFS' MOTION FOR APPOINTMENT OF COUNSEL.