IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHARLES A. HICKS; DENEEN HICKS; STACY HICKS, | CIV. NO. 14-00254 HG-BMK |
| Plaintiffs, | |
| vs. | |
| MAKAHA VALLEY PLANTATION HOMEOWNERS ASSOCIATION; HAWAII FIRST, INC., | |
| Defendants. | |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT
(ECF No. 42)**

Plaintiffs Charles A. Hicks, Deneen Hicks, and Stacy Hicks, proceeding pro se, complain that Defendants Makaha Valley Plantation Homeowners Association and Hawaii First, Inc. discriminated against them. They claim discrimination based on their race, African-American, and Mr. Hicks' disability, in violation of the Fair Housing Act, 42 U.S.C. §§ 3604(b), (f), 3617, Hawaii Revised Statutes, Chapter 368 (establishing the Hawaii Civil Rights Commission), and the Hawaii Discrimination in Real Property Transactions Act, Hawaii Revised Statutes, Chapter 515-3(2) and (9) and 515-16(6). Defendants are the condominium association and the management company for Makaha Valley

1

Plantation condominiums where Plaintiffs owned a condominium
unit.

Defendants move to dismiss for failure to state a claim.
Defendants' Motion to Dismiss Amended Complaint (ECF No. 42) is
**DENIED**.

## PROCEDURAL HISTORY

On May 29, 2014, Plaintiffs Charles A. Hicks, his wife,
Deneen Hicks, and their daughter, Stacy Hicks, proceeding pro se,
filed their Complaint. (ECF No. 1.)

Prior to filing their May 29, 2014 Complaint in this Court,
Plaintiffs filed complaints with the U.S. Department of Housing
and Urban Development ("HUD") and the Hawaii Civil Rights
Commission ("HCRC"). (Def. Motion at Exhibits B and C, ECF No.
28-4 and 28-5).[1]  HUD referred the matter to the HCRC for

---

[1] Pursuant to Fed. R. Evid. 201(b), the Court takes judicial
notice of the following documents attached to Defendants' prior
Motion to Dismiss as public records whose accuracy is not in
dispute: (1) Letter from U.S. Department of Housing and Urban
Development to Hawaii First, Inc., dated July 9, 2012,
transmitting Plaintiffs' housing discrimination complaint, dated
June 28, 2012, attached as Exhibit B (ECF No. 28-4); (2) Letter
from the Hawaii Civil Rights Commission to Makaha Valley
Plantation Homeowners Association, dated October 24, 2012,
transmitting Plaintiffs' discrimination Complaint, dated October
17, 2012, attached as Exhibit C (ECF No. 28-5); and (3) Letter,
dated February 24, 2014, from Hawaii Civil Rights Commission to
Plaintiffs regarding Notice of Dismissal and Right to Sue,
attached as Exhibit D. (ECF No. 28-6.)  See Anderson v. Holder,
673 F.3d 1089, 1094 n. 1 (9th Cir. 2012) ("[A court] may take
judicial notice of records and reports of administrative
bodies."); Gallo v. Board of Regents of University of California,
916 F.Supp. 1005, 1007 (S.D. Cal. 1995) ("The Court may consider
both the EEOC right to sue letter and the EEOC charge, either as

investigation. (Id.) On February 12, 2014, HCRC issued a "Notice of Dismissal and Right to Sue" letter. (Def. Opposition at Exh. D, ECF No. 28-6.) The HCRC dismissed the case on the basis of no cause. (Id.)

Plaintiffs' HUD/HCRC complaints contain the same allegations as made by Plaintiffs in this action.

On November 28, 2014 Defendants Makaha Valley Plantation Homeowners Association and Hawaii First, Inc. filed their Motion for Dismissal of All Claims Against Defendants Makaha Valley Plantation Homeowners Association and Hawaii First Inc. (ECF No. 28.)

On December 17, 2014, Plaintiffs submitted a letter to the Court regarding "Opposition to Motion for Dismissal". In the letter, Plaintiff Deneen Hicks stated that she intended "to submit an answer to the court (a reply) on or before Jan. 8, 2015." (ECF No. 33.)

On December 18, 2014, the Court entered a Minute Order giving Plaintiffs additional time, until January 8, 2015, to file an Opposition and extending Defendants time to file a reply until January 19, 2015. (ECF No. 32.)

On January 8, 2015, Plaintiffs filed an Opposition to

referenced in the complaint or as public records subject to judicial notice.").

Defendants Makaha Valley Plantation Homeowners Association and Hawaii First, Inc.'s Motion for Dismissal of All Claims Against Defendants Makaha Valley Plantation Homeowners Association and Hawaii First, Inc. (ECF No. 34.)

On January 19, 2015, Defendants filed their reply. (ECF No. 36.)

On January 26, 2015, the Court issued an Order Granting Defendants' Motion for Dismissal of All Claims Against Defendants Makaha Valley Plantation Homeowners Association and Hawaii First, Inc. With Leave to Amend. (ECF No. 38.)

On March 9, 2015, Plaintiffs filed an Amended Complaint. (ECF No. 40.)

On March 20, 2015, Defendants Makaha Valley Plantation Homeowners Association and Hawaii First, Inc. filed a Motion to Dismiss Amended Complaint. (ECF No. 42.)

On March 24, 2015, the Court issued a briefing schedule requiring Plaintiffs to file an Opposition by April 13, 2015 and Defendants to file a Reply by April 28, 2015. (ECF No. 43.)

On April 13, 2015, Plaintiffs filed a request for extension of time to file an Opposition to Defendants' Motion to Dismiss their Amended Complaint. (ECF No. 49.)

On April 14, 2015, the Court issued a Minute Order granting Plaintiffs' request for extension of time and giving Plaintiffs until April 28, 2015 to file an Opposition to Defendants' Motion

to Dismiss their Amended Complaint. (ECF No. 50.) The Minute
Order also extended Defendants time to file a reply to June 15,
2015.

Plaintiffs have not filed an Opposition and Defendants have
not filed a Reply.

Pursuant to Local Rule 7.2(d), the Court has elected to
decide this matter without a hearing.

## BACKGROUND

Plaintiffs Charles A. Hicks and Deneen Hicks are a married
couple and plaintiff Stacey Hicks is their daughter. (Am. Compl.
¶ 3, ECF No. 40.) Mr. and Mrs. Hicks have two other adult
children who are not named as plaintiffs in this lawsuit. (<u>Id.</u>)
According to the Amended Complaint, Mr. and Mrs. Hicks, and their
children, are African-American. (<u>Id.</u> at p. 17.)

Plaintiffs allege that on November 10, 2008, Plaintiff
Charles Hicks purchased a condominium at Makaha Valley Plantation
located in Waianae, Hawaii. (<u>Id.</u> at p. 6.) On November 10, 2008,
the Hicks family moved into their unit, Unit 37A, at Makaha
Valley Plantation. (<u>Id.</u> at p. 7.) Plaintiffs lived at Makaha
Valley Plantation at least until February 2, 2012. (<u>Id.</u> at p.
15.)[2] Plaintiffs now reside in Georgia. (ECF No. 15.)[3]

---

[2] Based on the allegations in the Amended Complaint, it is
unclear when Plaintiffs vacated the unit. Plaintiffs allege that
they "ultimately had to leave the island, on February 2, 2012."
(<u>Id.</u> at p. 15.) In another part of the Amended Complaint,

Defendant Makaha Valley Plantation Homeowners Association is the homeowners' association for the condominium. (Id. at p. 5.) Defendant Hawaii First, Inc. has been the management company for Makaha Valley Plantation Homeowners Association since May 2, 2010. (Id. at p. 5.)

Plaintiffs allege that while residing at their Makaha Valley Plantation condominium unit "they were subject to discriminatory terms and conditions of tenancy based upon their race, color and disability." (Id. at p. 5; see id. at 15.) Plaintiffs allege that they were harassed, ignored, and treated differently than other non-black residents.[4]

Plaintiffs also allege that Mr. Charles Hicks is a disabled veteran with post traumatic stress disorder (PTSD) who is entitled to a reasonable accommodation of a quiet environment. Plaintiffs allege that they requested that Defendant Makaha Valley Plantation Homeowners Association notify the owner of the

_____

however, Plaintiffs allege that a hole existed in their living room "to the end of plaintiff's tenancy on March 3, 2014." (Id. at p. 8.) It appears that Plaintiffs left Oahu and resided in California from February 2, 2012 to March 4, 2013 and then returned to Oahu until March 3, 2014. (Id. at p. 9.)

[3] Plaintiffs filed a request to transfer this case to Georgia. (ECF No. 15.) The Court denied Plaintiffs' motion to transfer venue because all Defendants reside in Hawaii and all actions giving rise to the claims in this action occurred in Hawaii. (ECF No. 27.)

[4] In their Amended Complaint, Plaintiffs use the terms "African-American" and "black" to describe themselves and the term "non-black" to describe other residents.

unit above Plaintiffs regarding excessive noise to assist with
his reasonable accommodation request, but that Makaha Valley
Plantation Homeowners Association failed to notify the unit owner
as required by the Covenants, Conditions and Restrictions of the
Makaha Valley Plantation condominium project (CC&Rs).

In support of these claims, Plaintiffs' Amended Complaint
describes a number of incidents that allegedly occurred while
Plaintiffs resided at their Makaha Valley Plantation condominium
unit.  Plaintiffs allege that these incidents violate both
federal and state anti-racial and disability discrimination laws.

### Noise complaints about Plaintiffs

Plaintiffs allege that on their first day of tenancy in Unit
37A, November 10, 2008, security came to the unit and stated that
they received an excessive noise complaint regarding Plaintiffs'
unit. (<u>Id.</u> at p. 7.)  Plaintiffs contend that they were not
making excessive noise.  (<u>Id.</u>)  Plaintiffs allege that Defendants
continued to wrongly accuse them of noise violations. (<u>Id.</u>)

### 2008 leak from Unit 37B above Plaintiffs' unit

According to Plaintiffs, in December 2008, a big rainstorm
caused a leak from Unit 37B's upstairs lanai into their unit,
Unit 37A. (<u>Id.</u> at p. 8.)  The leak damaged Plaintiffs' living
room ceiling. (<u>Id.</u>)  Plaintiffs allege that Defendants are
responsible for maintenance and repairs of the exterior of the
condominium project and that the damage to the inside of Unit 37A

was caused by inadequate and poor maintenance of the exterior which, in turn, affected the inside of Plaintiff's unit. (<u>Id.</u> at p. 8.) Plaintiffs allege that Defendants stopped the leak, but only after it had damaged their living room ceiling. (<u>Id.</u>)

### **Citations about bamboo divider, water hose, white netting on lanai**

Defendants cited Plaintiffs for having a bamboo divider on their lanai which Plaintiffs erected for privacy. (<u>Id.</u> at p. 8). Plaintiffs were particularly concerned about privacy since they were exercising their legal right to grow medical marijuana in their home. (<u>Id.</u>) The citation from Defendants stated that the bamboo divider was not appropriate lanai furniture. (<u>Id.</u>) Plaintiffs allege that they received inconsistent messages about the bamboo divider and that the "defendants Board of Directors, Head of Security" told Plaintiff Deneen Hicks that the dividers were appropriate. (<u>Id.</u>) After receiving the fine, Plaintiffs removed the bamboo divider. (<u>Id.</u> at p. 9.)

Plaintiffs were also cited for other objects on their lanai, including a water hose, cooler, and white netting. (<u>Id.</u> at p. 9.) Plaintiffs allege that they noticed that, unlike them, other tenants were allowed to maintain restricted items on their lanais. (<u>Id.</u>)

### **Additional leaks from Unit 37B**

Plaintiffs allege that in August 2009, a rental tenant

living in the unit above theirs, Unit 37B, rigged the toilet to intentionally overflow when moving out. (Id. at p. 9.) The overflow resulted in severe water damage to Plaintiffs' bathroom ceiling. (Id.) Plaintiffs allege that Defendants were responsible for ensuring that the leak was fixed and their ceiling was properly repaired once Plaintiffs informed them of the leak. (Id.) Plaintiffs allege that Defendants did not do a leak investigation until April 2013 and the leak was not properly fixed by the current owner of Unit 37A until the end of June 2013. (Id.)

According to Plaintiffs, they were in California from February 2, 2012 to March 4, 2013. (Id.) When Plaintiffs returned home, they notified Defendants that there was still water leaking into their unit. (Id. at p. 9-10.) Plaintiffs do not allege that Defendants knew that the water leak was still an issue prior to this time. (Id. at p. 10.) In response to Plaintiffs notification, the on-site manager gave Plaintiff Deneen Hicks the information for the new owner of Unit 37B. (Id.) Plaintiffs contacted the new owners and the leak was repaired. (Id.)

Plaintiffs acknowledge that Defendants provided them with the contact information for the owners of Unit 37B both in August 2009 and in March 2013, but allege that Defendants would not give them contact information "in between that time." (Id. at p. 10.)

9

**Non-renewal of Plaintiffs' insurance**

Plaintiffs allege that because of the continued water leaks, they had to obtain high risk insurance at a premium cost to Plaintiffs. (<u>Id.</u> at p. 10.)

**Not allowing children to play on grass**

In November 2010, Plaintiffs Deneen and Charles Hicks' two year old granddaughter was visiting. (<u>Id.</u> at p. 10.) Plaintiff Deneen Hicks, one of her daughters, and her granddaughter were out front of Plaintiffs' unit. Plaintiff Deneen Hicks was talking to her neighbor from Unit 40A. (<u>Id.</u>) Plaintiff Deneen Hicks, one of her daughters, and her granddaughter were all outside playing together on the grass. (<u>Id.</u>) Plaintiffs allege that "defendants security came over to the plaintiff and her neighbor, and told them the babies (toddlers) were not allowed to play on the grass." (<u>Id.</u> at p. 11.) The security guard told Plaintiff and the neighbor that they needed to take the children to play by the BBQ pits or the basketball court. (<u>Id.</u>)

**Inspection of kiddie pool**

Plaintiffs also express concern about another incident which took place while their granddaughter was visiting. (<u>Id.</u> at p. 11.) Plaintiffs Deneen and Charles Hicks allege that they were at the condominium project's kiddie pool with their granddaughter when "the security guard employed by defendants" inspected the kiddie pool at least three times. (<u>Id.</u>) This made Deneen and

Charles Hicks feel uncomfortable, and they left.

### **Medical marijuana**

Plaintiff Deneen Hicks provided documentation to the on-site management company regarding Plaintiff Charles Hicks' right to grow medical marijuana at Plaintiffs' residence. (<u>Id.</u> at p. 11.) The on-site management did not object to their growing of medical marijuana.  Later, another member of the on-site management team asked Plaintiff Charles Hicks to come to the management office and lectured him about growing the medical marijuana only for personal use and not to give or sell to other people on the property.  (<u>Id.</u> at p. 12.)  Plaintiffs suggest that management lectured Mr. Hicks because of his race.

### **Washing car**

Plaintiffs allege that Mr. Hicks was washing his car in the designated car washing area at the Makaha Valley Plantation condominiums when a security guard approached him and asked him if he lived there or what unit he was visiting and if he had permission to use the car washing facilities.  (<u>Id.</u> at p. 12.) Plaintiffs allege that their car, like all residents of Makaha Valley Plantation, has a clearly visible parking sticker indicating that the car's owner is a resident of Makaha Valley Plantation. (<u>Id.</u>)  Plaintiffs' Amended Complaint does not state what Mr. Hicks said in response to the security guard. Plaintiffs allege that they "have observed other residents, non-

black, to wash their cars similarly displaying a resident sticker, and without any questioning or interference by the defendants security guards." (Id.)

**Mowing grass**

Plaintiffs allege that Defendants' onsite gardener operated a gasoline-powered industrial type lawnmower on a small patch of grass outside of Plaintiffs' unit for more than twenty minutes. (Id. at p. 13.) Plaintiffs allege that this was longer than necessary and meant to disturb and annoy the Plaintiffs. (Id.) Plaintiffs further allege that Defendants did so despite the fact that they were aware that Plaintiff Charles Hicks' disability made him extremely sensitive to noise. (Id.)

**Failure to trim trees**

Plaintiffs allege that Defendants contracted to have all of the trees on the Makaha Valley plantation property landscaped and trimmed, but did not trim the tree which hung above Mrs. Hicks' assigned parking space. (Id. at p. 13.) Mrs. Hicks complained to on-site management, but they did not take any action. (Id.)

**Racially derogatory epithets by resident in Unit 37B**

Plaintiffs allege that on November 11, 2011, the resident in the unit above Plaintiffs, Unit 37B, "engaged the plaintiffs in an unprovoked stream of racially-derogatory epithets, including a threat by the male in unit 37B, that he would 'beat [CHARLES] to death', and intermittently stomping in the floor which made it

unbearable in the plaintiffs unit below." (<u>Id.</u> at p. 13.) This was not a face to face confrontation. Rather, Plaintiffs allege that the residents in Unit 37B were engaging in this behavior from the inside of their unit. (<u>Id.</u>) According to the Amended Complaint, Mr. Hicks instructed Mrs. Hicks to call Defendants' security as well as the police. (<u>Id.</u>) The security guard came to the unit and made a report. (<u>Id.</u>) Soon after, the police arrived. (<u>Id.</u>) Plaintiffs asked the police to make a report because this was not the first time such an incident had occurred. (<u>Id.</u> at p. 14.) Plaintiffs have had other negative encounters with the residents above them. (<u>Id.</u>)

Plaintiffs decided to pursue a restraining order against the resident above them. Plaintiffs obtained a copy of the police report from the November 11, 2011 incident, but the report had the names of the residents in Unit 37B blacked out. (<u>Id.</u> at p. 14.) The police informed Mrs. Hicks that it was their policy not to release un-redacted reports to private citizens. (<u>Id.</u>)

Plaintiffs dispute the accuracy of the police report. (<u>Id.</u>) The police wrote the report as if Plaintiffs were the cause of the altercation and that the residents in Unit 37B were the victims. (<u>Id.</u>) Plaintiffs contend that the contrary is true. (<u>Id.</u>)

Because she could not get their names from the police, Mrs. Hicks asked the on-site managers for the names of either the

tenants or owners of Unit 37B (if the tenants were not the owners). Plaintiffs allege that they have a right to this information under the CC&Rs and House Rules for Makaha Valley Plantation. (<u>Id.</u> at p. 15.) An employee in the management office named Nancy told Mrs. Hicks that she could not have the contact information for the residents of Unit 37B, but that she would take Mrs. Hicks' contact information and have the residents of Unit 37B call her. (<u>Id.</u>) Plaintiffs were never contacted. (<u>Id.</u>) Plaintiffs allege that they asked the management office for contact information for the tenants or owners of Unit 37B at least three times, but were not given it. (<u>Id.</u>)[5]

### **Parking space for Plaintiff Stacey Hicks**

In November 2011, Stacey Hicks started living with her parents, Plaintiffs Deneen and Charles Hicks to attend school and to work at the Makaha Valley Resort and Golf Club. (<u>Id.</u> at p. 15.) The on-site management told Stacey Hicks that she was not allowed to park in a guest spot, but that she needed to rent a space from a tenant on the property that had an extra space. (<u>Id.</u> at p. 15.) Nancy in the on-site management office helped Plaintiff find a tenant who had a parking space for rent. (<u>Id.</u>) Stacey Hicks rented the parking space for a month, but the tenant had to terminate the contract to rent the parking space because

_____

[5] During the same time period, Plaintiffs allege that they had problems getting Defendants to give them the owner of Unit 37B's contact information to address the water leak.

14

someone was moving into the unit. (<u>Id.</u> at p. 16.) Stacey Hicks then contacted another resident about renting a parking space. (<u>Id.</u>)

When that resident said that Stacey could rent his parking space, Defendants required Stacey to obtain a consent letter from both the leaseholder and the unit owner. According to Plaintiffs, this requirement is in direct contradiction of the CC&Rs and the House Rules. Plaintiffs had not obtained this documentation. According to Plaintiffs, the security guard did not allow Stacey's vehicle on the property because she did not have a parking spot. After Stacey got off work around 11:00 p.m., she tried to come through the gate and the security guard told her that management had turned off her parking pass because the owners of the parking space that Stacey was trying to rent had not confirmed that she could rent it. (<u>Id.</u> at p. 16.) Stacey called her parents, and Mr. and Mrs. Hicks went to the security gate. (<u>Id.</u> at p. 17.)

According to Plaintiffs, when Mr. Hicks tried to talk to the supervisor, the supervisor kept backing up into the guard gate shack and telling Mr. Hicks not to come near him. (<u>Id.</u> at p. 17.) The next day, Mr. Hicks received a citation for yelling at the security guard. (<u>Id.</u>) Plaintiffs acknowledge that they were irritated by the security guard's attitude, but dispute that there was any basis for the citation. (<u>Id.</u>)

Plaintiffs allege that they were treated differently than other non-black residents.  They allege that "other residents who were non-black were freely allowed to break other provisions of the CC&R's parking rules."  (Id.)  As an example, Plaintiffs allege that a truck owned by a non-black resident was allowed to remain with a flattened tire for over two weeks in violation of the CC&R's, but was not ticketed by on-site management.  (Id.)

Plaintiffs similarly allege that a car with a bad oil leak was allowed to remain on the property without receiving a citation.  (Id.)  Plaintiffs allege that both vehicles were in the immediate vicinity of their unit.  (Id.)

### Plaintiff Charles Hicks' alleged disability

The Amended Complaint alleges that Mr. Hicks is a "permanently disabled veteran" who suffers from post traumatic stress discover (PTSD) (Id. at p. 3-4).  According to the Amended Complaint, Mr. Hicks' PTSD is a disability that makes him particularly sensitive to noise.  (Id. at p. 18.)  Mr. Hicks alleges that he needed the reasonable accommodation of a quiet environment.  (Id.)  Mr. Hicks alleges that Mrs. Hicks requested this reasonable accommodation on his behalf but that Defendants denied him this reasonable accommodation.  (Id.)

According to the Amended Complaint, in October and November 2011, Mrs. Hicks made a number of complaints to Defendant Association of Apartment Owners of Makaha Valley Plantation about

the intentional noise being created by the tenant above Plaintiffs' unit. (<u>Id.</u> at p. 17.) Plaintiffs believed that the tenants were intentionally creating noise to harass Plaintiffs. (<u>Id.</u>) Plaintiffs allege that the CC&Rs state that complaints involving a rental tenant should be referred to the unit's owner. (<u>Id.</u>) Plaintiffs allege that Mrs. Hicks asked Defendant Association of Apartment Owners of Makaha Valley Plantation to report the noise disturbances being caused by the tenant to the unit owner, but that the association never took any action to contact the owner regarding Plaintiffs' complaints. According to the Amended Complaint, Mrs. Hicks requested that the association take the appropriate action to remedy the noise disturbances as a reasonable accommodation for Mr. Hicks' PTSD. (<u>Id.</u> at p. 18.) Despite her requests, Plaintiffs allege that the association failed to comply with the reasonable accommodation request because it failed to notify the unit owner as required by the CC&Rs.

**STANDARD OF REVIEW**

**Motion to Dismiss**

The Court must dismiss a complaint as a matter of law pursuant to Federal Rule of Civil Procedure 12(b)(6) where it fails "to state a claim upon which relief can be granted." Rule (8)(a)(2) of the Federal Rules of Civil Procedure requires "a

short and plain statement of the claim showing that the pleader
is entitled to relief." When considering a Rule 12(b)(6) motion
to dismiss, the Court must presume all allegations of material
fact to be true and draw all reasonable inferences in favor of
the non-moving party. <u>Pareto v. F.D.I.C.</u>, 139 F.3d 696, 699 (9th
Cir. 1998).

Conclusory allegations of law and unwarranted inferences are
insufficient to defeat a motion to dismiss. <u>Id.</u> at 699. The
Court need not accept as true allegations that contradict matters
properly subject to judicial notice or allegations contradicting
the exhibits attached to the complaint. <u>Sprewell v. Golden State
Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).

In <u>Bell Atl. Corp. v. Twombly</u>, the United States Supreme
Court addressed the pleading standards under the Federal Rules of
Civil Procedure in the anti-trust context. 550 U.S. 544 (2007).
The Supreme Court stated that Rule 8 of the Federal Rules of
Civil Procedure "requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action," and
that "[f]actual allegations must be enough to raise a right to
relief above the speculative level." <u>Id.</u> at 555.

Most recently, in <u>Ashcroft v. Iqbal</u>, the Supreme Court
clarified that the principles announced in <u>Twombly</u> are applicable
in all civil cases. 129 S.Ct. 1937 (2009). The Court stated
that "the pleading standard Rule 8 announces does not require

18

'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." <u>Id.</u> at 1949 (citing <u>Twombly</u>, 550 U.S. at 555). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).

The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." <u>AE ex. rel Hernandez v. Cnty. of Tulare</u>, 666 F.3d 631, 637 (9th Cir. 2012) (internal quotations

omitted).

**Pro Se Plaintiff**

The Court construes the Complaint liberally because
Plaintiffs are proceeding pro se.  <u>Erickson v. Pardus</u>, 551 U.S.
89, 94 (2007).

## ANALYSIS

Defendants contend that Plaintiffs' Amended Complaint fails
to state a claim for race or disability discrimination.
Plaintiffs' Amended Complaint references the federal Fair Housing
Act, 42 U.S.C. § 3601 *et seq.* and Hawaii's state law counterpart,
the Hawaii Discrimination in Real Property Transactions Act,
Hawaii Revised Statutes, Chapter 515 ("HDRPTA").[6]

**Fair Housing Act**

The Fair Housing Act, Section 3604 of Title 42, prohibits
discrimination "against any person in the terms, conditions, or
privileges of sale or rental of a dwelling, or in the provision
of services or facilities in connection therewith, because of

---

[6] Plaintiffs' Amended Complaint also references Hawaii
Revised Statutes, Chapter 368.  Chapter 368 of the Hawaii Revised
Statutes establishes the Hawaii Civil Rights Commission and
pertains to procedures for the commission to review alleged
unlawful discriminatory practices.  Chapter 368 "does not provide
an individual cause of action in state or federal court." <u>Sherez
v. State of Hawai'i Dept. of Educ</u>., 396 F.Supp.2d 1138, 1146 (D.
Haw. 2005).

race, color, religion, sex, familial status, or national origin."
42 U.S.C. § 3604(b).

The Fair Housing Act also protects against a hostile housing environment as a result of threats and intimidation.  Section 3617 provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

Finally, the Fair Housing Act prohibits discrimination based on disability.  Under the Fair Housing Act it is unlawful to "discriminate against any person ... in the provision of services or facilities in connection with [his] dwelling, because of a handicap" of that person or any person associated with that person. 42 U.S.C. § 3604(f)(2).

**Hawaii Discrimination in Real Property Transactions Act**

The Hawaii Discrimination in Real Property Transactions Act ("HDRPTA"), Hawaii Revised Statutes, Section 515-16 similarly prohibits discrimination based on race or disability.  HDRPTA, Section 515-16(6) states that it is a discriminatory practice:

> To threaten, intimidate or interfere with persons in their enjoyment of a housing accommodation because of the race, sex, including gender identity or expression, sexual orientation, color, religion, marital status, familial status, ancestry, disability, age, or human

immunodeficiency virus infection of the persons, or of
visitors or associates of the persons.

Haw. Rev. Stat. § 515-16(6).

Section 515-3(9) of the HDRPTA makes it a discriminatory
practice for owners or any other person engaging in a real estate
transaction "[t]o refuse to make reasonable accommodations in
rules, policies, practices, or services, when the accommodations
may be necessary to afford a person with a disability equal
opportunity to use and enjoy a housing accommodation".  Haw. Rev.
Stat. § 515-3(9).

## A.    Race Discrimination Claims

To assert a Fair Housing Act claim under Section 3617,
Plaintiffs must allege that defendant "threatened, intimidated or
interfered" with their enjoyment of their dwelling because of
their race. 42 U.S.C. § 3617; <u>see</u> <u>Brown v. City of Tucson</u>, 336
F.3d 1181, 1191 (9th Cir. 2003) (discussing requirements for
Section 3617 interference claim); <u>Halprin v. Prairie Single</u>
<u>Family Homes of Dearborn Park Ass'n</u>, 388 F.3d 327 (7th Cir. 2004)
(homeowners' allegations that their neighbors harassed them
because of religion and that such harassment was backed by
homeowners' association to which they belonged were sufficient to
state claim under Fair Housing Act (FHA) provision making it
unlawful to coerce, intimidate, threaten or interfere with any
person on account of the exercise any right granted by the Act

and regulation prohibiting threatening, intimidating or interfering with persons in their enjoyment of a dwelling because of religion). Under Section 3617, "the language 'interfere with' has been broadly applied to reach all practices which have the effect of interfering with the exercise of rights' under the federal fair housing laws." United States v. City of Hayward, 36 F.3d 832, 835 (9th Cir. 1994) (quoting Michigan Protection & Advocacy Serv. v. Babin, 18 F.3d 337, 347 (6th Cir. 1994) (citations and quotations omitted)); see also Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 209 (1972) ("The language of the [FHA] is broad and inclusive."); Nevels v. Western World Ins. Co., Inc., 359 F.Supp.2d 1110, 1129 (W.D. Wash. 2004) ("[I]nterference ... has been broadly applied to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws.") (internal quotation marks omitted).

Plaintiffs may also state a claim under Section 3604(b) by alleging that (1) they have rights protected under the Fair Housing Act; (2) defendants have engaged in discriminatory conduct; and (3) as a result of defendants' discriminatory conduct, plaintiffs have suffered a distinct and palpable injury. See Harris v. Itzhaki, 183 F.3d 1043, 1051 (9th Cir. 1999); The Committee Concerning Community Improvement v. City of Modesto, 583 F.3d 690, 713 (9th Cir. 2009) (concluding that 42 U.S.C. §

3604(b) of the FHA reaches post-acquisition discrimination).

The same type of allegations state a claim under the Hawaii Discrimination in Real Property Transactions Act, Haw. Rev. Stat. § 515-16(6).  See Mabson v. Ass'n of Apartment Owners of Maui Kamaole, No. 06-00235 DAE LEK, 2007 WL 2363349, at *10 (D. Haw. Aug. 13, 2007).

The Court categorizes Plaintiffs' allegations based on race discrimination and addresses them in turn.

### 1.    Alleged threats, intimidation, and interference by on-site management

Plaintiffs allege that Defendants discriminated against them by engaging in unfair and harassing conduct.  In particular, Plaintiffs complain of: unwarranted noise complaints written up by on-site security against them; failure of the association and on-site management to timely provide Plaintiffs with contact information for tenants and/or owners of Unit 37B to address water leaks; citations by on-site management for placing certain objects on their lanai; a security guard preventing their children from playing in the grass; a security guard's intrusive inspection of the kiddie pool while Mrs. Hicks and her granddaughter were using it; questioning by a security guard while Mr. Hicks was washing Mrs. Hicks' car; lecturing by a management company employee about Mr. Hicks' growing of medical

marijuana; the on-site gardener's prolonged and unnecessary mowing of grass by Plaintiffs' unit; the on-site management's failure to trim a tree above Plaintiffs' assigned parking space after Plaintiffs complained; and the on-site management's disparate enforcement of the condominium's parking rules.

In their Amended Complaint, Plaintiffs generally allege that such actions constitute "discriminatory terms and conditions of tenancy based upon their race, color and disability, by the defendants." (Am. Compl. at p. 5.)  In some of these instances, Plaintiffs also expressly allege that Defendants treated them differently than other non-black residents or otherwise suggest that Defendants were interfering with Plaintiffs' enjoyment of their unit because of their race.  The majority of Plaintiffs' allegations pertain to actions by on-site management or security.  Certain allegations also refer to "Defendants" collectively and do not specify who engaged in the allegedly discriminatory conduct.  That said, Plaintiffs' Amended Complaint contains significantly more detail than their original Complaint.

Defendant Hawaii First, Inc., as the management company, may be liable for the allegedly discriminatory conduct by on-site management employees.[7]  See Meyer v. Holley, 537 U.S. 280 (2003)

_____

[7] According to the Amended Complaint, Hawaii First, Inc. has been the management company for Makaha Valley Plantation condominiums since May 1, 2010.  The prior management company was Hawaiiana Management Co., which served from April 25, 1998 to May 1, 2010, and is not named as a defendant.  (Am. Compl. at p. 5.)

(Fair Housing Act imposes liability without fault upon employer in accordance with traditional agency principles, and thus is imposes vicarious liability upon corporation for unlawful acts of its employees).  Defendant Makaha Valley Plantation Association, as the condominium association and principle or employer of the management company, may also be vicariously liable for the on-site management company's allegedly discriminatory conduct as well as for its own conduct.  See Holley v. Crank, 400 F.3d 667, 670 (9th Cir. 2005) (recognizing applicability of vicarious liability principles to Fair Housing Act claims); Alexander v. Riga, 208 F.3d 419, 432-433 (3d Cir. 2000)("Mr. Riga could not insulate himself from liability for discrimination in regard to an apartment building owned jointly by him and his wife and managed for their joint benefit, merely by relinquishing the responsibility for preventing discrimination to Mrs. Riga, his managerial agent.").  Although it is unclear whether the on-site security guards were employed by the management company, the association, or an entirely different entity, both Defendants may also be vicariously liable for the allegedly discriminatory conduct of the on-site security guards.

Mindful of the more liberal standard for pro se litigants, the Court finds that Plaintiffs have alleged sufficient facts to state a claim against both the management company, Defendant

Hawaii First, Inc. and the condominium association, Makaha Valley Plantation Association, for violation of the Fair Housing Act and the Hawaii Discrimination in Real Property Transactions Act based on alleged racially discriminatory conduct by on-site management employees and security guards.

   **2.   Hostile housing environment claim based on allegations of discriminatory conduct by residents of Unit 37B**

   In addition to alleging that Defendants treated them differently than other tenants because of their race, Plaintiffs allege that the residents in Unit 37B, the unit above theirs, engaged in hostile behavior toward Plaintiffs because of Plaintiffs' race.  Plaintiffs allege that Defendants contributed to the racially hostile environment by failing to help them address it despite Plaintiffs having informed Defendants of the situation.

   Plaintiffs' allegations are in the nature of a hostile housing environment claim under the Fair Housing Act, 42 U.S.C. § 3617.  The Ninth Circuit Court of Appeals has not yet addressed the issue of whether a hostile housing environment claim is actionable under the Fair Housing Act against a housing association or management company for the discriminatory conduct of one tenant against another.[8]

_____

   [8] In a 2001 unpublished decision, <u>Hall v. Meadowood Limited Partnership</u>, 7 Fed.Appx. 687, 689, 2001 WL 311320, at *1 (9th Cir. 2001), the Ninth Circuit Court of Appeals suggested that it

Other Circuit Courts of Appeal and lower courts in this
Circuit, however, have recognized hostile housing environment
claims where a plaintiff can establish that she was subjected to
harassment that was sufficiently severe or pervasive so as to
interfere with or deprive the plaintiff of her right to use or
enjoy her home and where the management company knew or should
have known of the harassment but failed to take appropriate
action.  See Neudecker v. Boisclair Corp., 351 F.3d 361, 364 (8th
Cir. 2003) (recognizing claim for disability harassment in the
housing context as actionable under the Fair Housing Act and the
Rehabilitation Act); Salisbury v. Hickman, 974 F. Supp. 2d 1282,
1290 (E.D. Cal. 2013) (reciting elements of hostile housing
environment claim based on sexual harassment); see also Doe v.
Hous. Auth. of Portland, No. 3:13-CV-1974-SI, 2015 WL 758991, at
*8 (D. Or. Feb. 23, 2015) (implicitly recognizing hostile housing
environment under 42 U.S.C. § 3617 based on allegations that
Defendants, including management company, allowed Plaintiff's
neighbors to harass and threaten her).

To state a hostile housing environment claim based on race
discrimination against a management company or condominium
association, a plaintiff would have to show that: (1) she was
subject to unwelcome harassment based on her race; (2) the

---

would recognize a hostile housing environment claim under the
Fair Housing Act against a landlord for discriminatory conduct by
the apartment manager, if properly alleged.

harassment was sufficiently severe or pervasive to deprive her of
her right to enjoy her home; and (3) the management company or
condominium association knew or should have known of the
harassment in question and failed to take prompt remedial action.
See Neudecker, 351 F.3d at 364-65 (recognizing hostile housing
environment claim based on disability); Martinez v. California
Investors XII, No. CV 05-7608-JTL, 2007 WL 8435675, at *5 (C.D.
Cal. Dec. 12, 2007) (hostile housing environment claim requires
showing of intentional discrimination); see also Francis v. Kings
Park Manor, Inc., No. 14-CV-3555 ADS GRB, 2015 WL 1189579, at *11
(E.D.N.Y. Mar. 16, 2015) ("assuming, without deciding, that a
'hostile housing environment' claim is actionable against a
landlord or property owner under the FHA, a question unresolved
at this time by the Second Circuit, such a claim would require
allegations of intentional discriminatory conduct, or failure to
intervene, by the landlord or property owner based on a protected
category. Turning to whether the Plaintiff has adequately done so
in this case, the Court concludes that he has not.").

Here, Plaintiffs have made sufficient allegations to state a
hostile housing environment claim based on race. Plaintiffs
allege that the residents in Unit 37B engaged in racially
discriminatory conduct against Plaintiffs, and that the
Defendants knew of this conduct, but that Defendants failed to
follow the CC&Rs and House Rules or to otherwise assist them or

29

take any remedial action.

Plaintiffs also suggest a hostile housing environment claim based on Mr. Hicks' disability because of an incident where the on-site gardener unnecessarily operated a loud lawn mower for more than twenty minutes outside of Mr. and Mrs. Hicks' bedroom window. (Am. Compl. at p. 12.) Plaintiffs allege that this occurred despite Defendants' knowledge of his disability, PTSD, that made him extremely sensitivity to noise. (Id. at p. 13.) Plaintiffs allege that the prolonged and unnecessary operation of the gas lawn mower was meant to disturb and annoy Plaintiffs. (Id.)

Plaintiffs have stated a hostile housing environment claim against Defendants based on race and/or disability under Section 3617 of the Fair Housing Act.

## B.    Discrimination Claim Based on Alleged Failure to Provide Reasonable Accommodation

The Fair Housing Act makes it unlawful to "discriminate against any person ... in the provision of services or facilities in connection with [his] dwelling, because of a handicap" of that person or any person associated with that person. 42 U.S.C. § 3604(f)(2). Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a

dwelling...." 42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204.

"The reasonable accommodation inquiry is highly fact-specific,

requiring case-by-case determination." DuBois v. Association of

Apartment Owners of 2987 Kalakaua, 453 F.3d 1175, 1179 (9th Cir.

2006)(quoting United States v. California Mobile Home Park Mgmt.

Co., 107 F.3d 1374, 1380 (9th Cir. 1997) (citations omitted)).

For a discrimination claim based on the failure to provide a

reasonable accommodation, a plaintiff is required to show that:

(1) he suffers a handicap as defined by the Fair Housing Act; (2)

defendants knew or should have known of plaintiff's handicap; (3)

accommodation "may be necessary" to afford the plaintiff "an

equal opportunity to use and enjoy the dwelling"; and (4)

defendants refused to make such an accommodation. 42 U.S.C. §

3604(f)(3)(B). See Roman v. Jefferson at Hollywood LP, 495

Fed.Appx. 804, 805, 2012 WL 5351249, at *1 (9th Cir. 2012).

Plaintiffs allege that Defendants violated the Fair Housing

Act by failing to provide Mr. Hicks with the reasonable

accommodation of a quiet environment for his PTSD.  Because Mr.

Hicks is the individual with the alleged handicap for which a

request for reasonable accommodation was made, it is Mr. Hicks,

and not Mrs. Hicks or Stacey Hicks, who would have standing to

bring a disability discrimination based claim.

The Court finds that Mr. Hicks has stated a disability

discrimination claim against Defendants based on their failure to

provide Mr. Hicks a reasonable accommodation of a quiet environment. According to the Amended Complaint, Mr. Hicks has a handicap, PTSD, and Defendants knew about Mr. Hicks' handicap because Mrs. Hicks told them. The Amended Complaint further alleges that Mrs. Hicks requested that the association accommodate Mr. Hicks by taking appropriate action to remedy the noise disturbances by the residents of Unit 37B. The Amended Complaint alleges that such an accommodation would have been reasonable because it involved enforcing the CC&Rs and House Rules.

Mr. Hicks has stated a disability discrimination claim against Defendants under the Fair Housing Act, 42 U.S.C. § 3604(f), and the Hawaii Discrimination in Real Property Transactions Act, Haw. Rev. Stat. § 515-3(11).

## CONCLUSION

Plaintiffs have stated a claim for race discrimination under the Fair Housing Act, 42 U.S.C. §§ 3604(b), 3617, and the Hawaii Discrimination in Real Property Transactions Act, Haw. Rev. Stat. §§ 515-3(2), 515-16(6).

Plaintiffs have stated a hostile housing environment claim based on race and/or disability against Defendants under Section 3617 of the Fair Housing Act, 42 U.S.C. § 3617, and the Hawaii Discrimination in Real Property Transactions Act. Haw. Rev. Stat. § 515-16(6).

Mr. Hicks has stated a disability discrimination claim under the Fair Housing Act, 42 U.S.C. § 3604(f), and the Hawaii Discrimination in Real Property Transactions Act, Haw. Rev. Stat. § 515-3(9), based on Defendants' failure to address his reasonable accommodation request and to reasonably accommodate him.

Plaintiffs do not have a claim under Chapter 368 of the Hawaii Revised Statutes. Chapter 368 establishes the Hawaii Civil Rights Commission and pertains to procedures for the commission to review alleged unlawful discriminatory practices, but does not create an individual cause of action in state or federal court.

Defendants' Motion to Dismiss (ECF No. 42) is **DENIED**.

IT IS SO ORDERED.

DATED: June 30, 2015, Honolulu, Hawaii.



 /s/ Helen Gillmor
Helen Gillmor
United States District Judge

---

Charles Hicks et al v. Makaha Valley Plantation Homeowners Association, et al.; Civ. No. 14-00254 HG-BMK; **ORDER DENYING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT (ECF No. 42)**

33